ARNOLD *v*. DONIPHAN LUMBER COMPANY.

Opinion delivered October 15, 1917.

1. MASTER AND SERVANT—INJURY TO SERVANT—USE OF SIMPLE TOOLS. —A master does not owe his servant the duty of inspecting tools given to the latter with which to work where the tool furnished is one which requires no special skill or training for its safe use, and when the defect in the tool, if any, is as obvious to the servant as it is to the master, or when the defect arises from the use of the tool, and the servant would naturally be the first person to discover the existence of the defect.

2. MASTER AND SERVANT—"SIMPLE TOOLS"—DUTY TO SERVANT.—Where a master places simple tools in the hands of a servant for use by him, the master is under a duty to inspect them and instruct as to their use, when the circumstances of the employment are such that reasonable care and prudence would suggest that this be done; but the master owes no such duty when the necessity therefor is not reasonably apparent.

3. MASTER AND SERVANT—INJURY TO SERVANT—DEFECTIVE HATCHET.— A complaint alleged an injury by a servant sustained by a defective hatchet. *Held*, a demurrer to the complaint was properly sustained.

Appeal from White Circuit Court; *J. M. Jackson,* Judge; affirmed.

*Rachels & Yarnell,* for appellant.

1. The allegations of the complaint must be taken as true upon demurrer. 101 Ark. 350.

2. The master is liable if, while in his employ, the servant is injured by the master's negligence. Act 175, Acts 1913, p. 734.

It is the duty of the master to exercise ordinary care in furnishing to his servant tools that are reasonably safe to perform the work for which the servant is engaged. 3 Labatt, Master & Servant, 2462-2465; Sherman & Redfield on Negligence, § 194 *et seq.;* 105 Ark. 392; 117 *Id.* 524; 99 *Id.* 265; 121 *Id.* 511; 81 *Id.* 598; 82 *Id.* 82; 48

*Id.* 347; 87 *Id.* 399; 56 *Id.* 206; 14 Am. & Eng. Ry. Cas. 209; 11 Lea (Tenn.) 372.

The tools were defective and improper and unsuited to the work to which they were put.

The master knew, or should have known, this; the servant did not, hence he was liable.

*Brundidge & Neelly,* for appellee.

1. A hatchet is a simple tool, and any defect was as obvious to appellant as to appellee, and any risk or damage in the use of same was assumed by the appellant; the defect, if any, was apparent. The rule of the cases cited by appellant does not apply. 57 Ark. 503; 7 Am. & Eng. Ann. Cas. 339, and cases cited.

2. Another qualification of the master's liability indulged in case of such simple tools and appliances is exemption from duty to inspect. 98 Me. 353; 57 Atl. 85; 118 Mich. 275; 76 N. W. 497; 126 N. Y. 568; 76 N. W. E. Rep. 952; 110 Wis. 85; N. W. Rep. 960, and notes; 7 A. & E. Ann. Cas., p. 342; 98 Mo. App. 555; 72 S. W. 710; 138 Ind. 290; 37 N. E. 722; 46 Am. St. 384. See also 68 N. E. 936; 93 N. E. 1083; 104 N. W. 577.

SMITH, J. Appellant sued to recover damages to compensate a personal injury sustained by him, and alleged substantially the following facts as constituting his cause of action. He was directed by his foreman to tear down a certain wire fence and replace it with a plank fence. For the purpose of drawing out the staples fastening the wire to the posts, he was furnished two hatchets, one of which he was directed to place against the point or edge of the staples and to drive the hatchet for a sufficient distance under the staple to force it from the post. That the hatchets were cheap and of poor construction and unfit for the use and purpose to which plaintiff was instructed and expected to put them, "in that the heads or parts of said hatchets that struck together were so tempered and hardened that they were liable to break off, splinter and sliver when struck against each other," and that the defendant knew, or should have

known, of the condition of the hatchets, whereas plaintiff did not know that the hatchets were unsafe and improper tools, as he was unaccustomed to do such work, and relied upon the defendant to furnish him safe and proper tools.

A demurrer was interposed and sustained, and this appeal has been prosecuted to reverse that action.

To sustain the action of the court below, attorneys for appellee invoke what they call, and what is commonly called, the ''simple tool'' doctrine. This doctrine, as such, has never had recognition by this court; yet the principles upon which that doctrine is based have been recognized in a number of decisions of this court. That is, the simplicity of a tool, and the skill or lack of it required in its use, have been treated as questions to be considered in determining the degree of care to be used by the master in the selection of such tools for the purposes of his servant, and of the directions and instruction which should be given the servant in its use. Two recent cases discuss the principles upon which the simple tool doctrine is predicated. These are *C., R. I. & P. Ry. Co.* v. *Smith,* 107 Ark. 512, and *Fordyce Lumber Co.* v. *Lynn,* 108 Ark. 377. Both of these cases were exhaustively briefed, as appears from the official report thereof.

In the first of these cases we said that there is no hard and fast rule that may be laid down as governing the liability of the employer for a defect in common tools and that we should not undertake to lay down any general rule determining what state of facts the rule of liability should embrace and what state of facts it should not embrace. In that case the undisputed evidence showed that the hammer with which the servant was injured was an eight-pound sledge hammer, which had an imperfect striking face, and was in a defective condition when considered with reference to the uses for which it was intended, and we said that, under the evidence of that case, the jury was warranted in finding that the master was negligent in furnishing this tool to the servant who used it, the injured servant not having been

permitted to make his own selection of the tools to be used by himself alone.

In the case of *Fordyce Lumber Co.* v. *Lynn, supra,* the injury to the servant was occasioned by the breaking of a stick in the use of which the servant was employed at the time of his injury. In holding that there was no liability under the facts of that case, we quoted with approval from the case of *Gulf C. & S. F. R. Co.* v. *Larkin,* 82 S. W. (Tex.) 1026, the following statement of the law:

"It is not the duty of a railroad company to inspect every implement or tool that it furnishes to its employees, but that duty arises whenever the machinery or implement is of such character that a man of ordinary prudence would, under the same circumstances, inspect the machinery or implement as a precaution against injury to the servant. * * * A master is not required to inspect the common tools and appliances which are committed to the custody of a servant who has the capacity to understand their character and uses. * * * If this requirement were sustained, then every farmer or housekeeper who furnishes an ax to his servant with which to cut wood for use upon the premises, or for other purposes, must use that care which would here be required with regard to the lantern by an inspection to discover the condition of the ax before he purchased it, and, during the use of it by the servant, he must keep up a course of inspection in order to insure safety."

And we also quoted with approval from the case of *Longpre* v. *Big Blackfoot Milling Co.,* 99 Pac. (Mont.) 131, a statement of the law to the effect that it is not the duty of the master to inspect, much less test, every tool or appliance put in the hands of an employee, but that this duty arises only when the appliance is of such a character that a man of ordinary prudence would, under the same circumstances, make an inspection as a precaution against injury to his servant, and that the master was not required to inspect simple appliances, the character and use of which are understood by all alike.

(1-2) An innumerable number of cases define the duty of the master in furnishing the servant safe tools with which to work, and the duty of inspecting those tools, but there are circumstances under which the master owes the servant no such duty. He does not owe this duty where the tool furnished is one which requires no special skill or training for its safe use, and when the defect, if any, is as obvious to the servant as it is to the master, or when the defect arises from the use of the tool and the servant would naturally be the first person to discover the existence of the defect. The concurrence of these conditions give rise to what is called the "simple tool" doctrine, which is another way of saying that the master must inspect and instruct when the circumstances of the employment are such that reasonable care and prudence would suggest that this be done; but that he owes no such duty when the necessity therefor is not reasonably apparent.

If the master is not to be held as an insurer of the servant's safety against any injury sustained in the course of his employment, and if the principles of law upon which the doctrine sometimes called the "simple tool" doctrine is based are to be given effect, we think this a case in which they should be applied.

(3) We take the allegations of the complaint as true when they are considered on demurrer, but we do not extend them by implication to cover allegations not there contained. We have here the allegation that the hatchet was an improper tool and was cheap and defective "in that the heads or parts of said hatchets that struck together were so tempered and hardened that they were liable to break off, splinter and sliver when struck against each other." Few tools could be simpler in their construction and use than a hatchet, and the defect which occasioned the injury was developed by its use by the servant himself; and we must, therefore, hold that the trial court properly sustained the demurrer to the complaint.

Judgment affirmed.