WISCONSIN & ARKANSAS LUMBER COMPANY v. ASHLEY.

## Opinion delivered April 23, 1923.

1. MASTER AND SERVANT—SIMPLE TOOL—CANTHOOK.—A canthook is not a tool so simple in its nature the furnishing of which may not form the basis of a charge of negligence.

2. MASTER AND SERVANT—ASSUMED RISK—CONTRIBUTORY NEGLIGENCE.—Where a servant has no opportunity to make a selection of a tool he does not assume the risk, nor is he guilty of contributory negligence, unless the defect in it and the danger from using it are so obvious that a man of ordinary prudence would not use it.

3. MASTER AND SERVANT—ASSUMED RISK.—Where defendant's foreman, having selected a defective canthook for plainti's use in unloading logs, promised to repair it, the promise relieved plaintiff from any assumption of risk in using it on that day.

4. MASTER AND SERVANT—INSTRUCTION AS TO FURNISHING SAFE TOOLS.—An instruction that it was the master's duty to furnish defendant a reasonably safe canthook for use was not improper where the undisputed evidence was to the effect that plaintiff's foreman furnished the particular canthook to him and directed him to use it.

5. APPEAL ERROR—WAIVER OF ERROR.—An error in giving an instruc- was waived where similar instructions on the same subject were asked by appellant.

Appeal from Union Circuit Court; *C. W. Smith,* Judge; affirmed.

*Mehaffy, Donham & Mehaffy,* for appellant.

The court erred in refusing to instruct a verdict for the defendant. 111 Ark. 309; 97 Ark. 438; 148 Ark. 66; 149 Ark. 77. Appellee had the right to select his own tools to work with, and assumed the risk of any defect therein. 122 Ark. 522; 130 Ark. 486. His knowledge of the defective tool was equal to or greater than appellant's. 2 Bailey, Personal Injuries, 1292; 18 R. C. L. 547, 549; 64 S. E. (Ga.) 65, 18; R. C. L. Master & Servant, 652; 88 Ark. 28. Defect was obvious, and appellee assumed the risk, even though there was a promise to repair. 88 Ark. 34; 148 Ark. 78; 81 Ark. 343. Canthook was a simple tool, and a promise to repair could not relieve the servant from assumption of risk of injury by its use.

2 Bailey, Personal Injuries, 1292; 26 Cyc. 1209; 18 R. C. L. 652. Following implements have been held to be "simple tools:" " Prize pole," 17 S. W. 580; "crowbar," 28 So. 643; "claw-bar," 47 Ill. App. 465, 62 S. W. 1077; "gooseneck wrench," 82 S. W. 319; "wrench," 98 Fed. 192; "chisel," 67 Atl. 28; 57 Ark. 503; "dull long-handled hook," 46 Hun 497; "lifting jack," 117 Ill. App. 9; "hammer," 91 N. W. 152; "ladder," 55 Ark. 483; "monkey-wrench," 106 N. W. 841; "defective lantern globe," 82 S. W. 1026; "tongs," 182 Pa. 109; a "watergauge," 97 N. Y. S. 801; "wheelbarrow," 105 Pac. 794; "stick," used for unchoking machine, 108 Ark. 377; "hatchet," 130 Ark. 486. Promise to repair canthook had no reference to safety of appellee. 4 Labatt on Master and Servant, 3864; 3 Texas Civil App. 487; 2-3 S. W. 146; 58 Ill. App. 609; 91 Ill. App. 269; 6 C. C. A. 190; 12 U. S. App. 574; 56 Fed. 973; 22 Tex. Civ. App. 596, 55 S. W. 362; 109 Ill. App. 403; 117 Ky. 556, 78 S. W. 448; 137 Ky. 414, 125 S. W. 1067; 96 Tex. 605, 74 S. W. 897; 97 Am. St. Rep. 937; 41 Tex. Civ. App. 119, 92 S. W. 411; 67 S. W. 788; 53 Wash. 687; 102 Pac. 763; 155 Ill. App. 364. No negligence of appellant shown. Court erred in giving appellee's requested instruction No. 3½. 93 Ark. 564; 95 Ark. 708; 94 Ark. 282; 96 Ark. 184; 102 Ark. 627; 134 Ark. 575. Instruction No. 4 also erroneous. 93 Ark. 29; 14 R. C. L. 738.

*Powell & Smead* and *D. D. Glover,* for appellee.

No error in giving appellee's instructions. 130 Ark. 486; 107 Ark. 512. Appellee was not negligent. Facts of this case altogether different from 147 Ark. 77, which is not in point. Risk not assumed by appellee. 2 Bailey on Personal Injuries, 1279; 90 Ark. 555; 144 Ark. 377. Canthook not a simple tool. 107 Ark. 512; Words and Phrases, 594; 98 Miss. 750, 40 L. R. A. (N. S.) 852; 132 Ga. 211, n 40 L. R. A. (N. S.) 85; 136 Ark. 473. Promise to appellee was with reference only to his safety. The evidence supports the verdict.

*Mehaffy, Donham & Mehaffy,* in reply.

Appellee was an experienced servant, appreciated the danger, and assumed the risk. 105 Ark. 434; 95 Ark. 291; 101 Ark. 197; 103 Ark. 61. Evidence uncontradicted had right to choose his own canthook. 93 Ark. 140; 108 Ark. 377; 107 Ark. 512; 4 Thompson on Negligence, § 4003. Appellant's theory of the case ignored by appellee's instruction 3½. Case of 149 Ark. 77 controlling here.

McCulloch, C. J. Appellant is a corporation, organized under the laws of the State of Wisconsin, and is operating a sawmill and lumber business in Hot Spring and Grant counties, in this State.

Appellee was employed by appellant as a log hauler in the woods, and while working in the line of his duty he received personal injuries.

This is an action instituted by appellee to recover damages on the allegations that his injuries were caused by negligence of appellant in furnishing a defective appliance with which appellee was required to work.

The appliance alleged to be defective, and with which appellee was working at the time he received his injuries, is a canthook, which is described as a tool with a wooden handle with a metal hook fastened to an iron cuff a short distance from the bottom, and used in lifting logs in unloading, the hook being attached to the cuff on the handle so as to give play to the hook. There is a metal band on the lower end of the handle with a nick in it, so that, while it rests on the upper side of a log, it will not slip, and the hook, being sharp on the end, is fastened in the lower side of the log, and in this way the log may be lifted with the hook.

Appellee was hauling logs on a wagon from the woods to the mill, and was injured while he was unloading logs from the wagon. Three logs were on the wagon, according to custom, and were held in place by bumper-blocks, which were fastened to the wagon with pins. In unloading it was necessary to release the blocks by

drawing out the pins, and then the logs were rolled off. The customary method was to draw the pin in the block on one end of the wagon, and, as this threw the whole weight of the logs against the blocks at the other end, it was necessary to lift the log resting against the blocks before the pin could be removed, and this lifting was done with a canthook.

It is alleged that the canthook was defective because a piece of the handle around which the cuff fits was broken off and allowed the cuff to slip, and that when appellee attempted to raise the log preparatory to drawing the pin from the block, the hook slipped and came free from the log, and the momentum pitched appellee forward, and the log rolled from the wagon and fell on him, crushing him. Appellee testified that he was injured in this way, and his own testimony, as well as that of other witnesses, tends to show that there was a defect in the canthook, and that it was this defect which caused his injury. He also testified as follows with reference to the use of this particular canthook: That the afternoon before his injury his wagon broke down, and in some way the canthook he was then using was run over and the handle broken; that he called upon his foreman, Mr. Siders, for another, and Siders handed him another hook and told him to use that one. He testified further that the next morning he discovered the defect in the canthook, and went to Siders and said, "Cap, I have got to have my canthook fixed, it won't hardly hold," and that Siders looked at it and replied, "That's all right, go ahead and use it today, and I will have it fixed tonight." Appellee testified that it was possible to use the hook and make it hold by grasping the cuff with one hand and holding it in place.

There was evidence introduced by appellant tending to show former statements made by appellee to the effect that the canthook slipped by reason of the fact that the bark on the log had been burned off and that the log was slippery, and the canthook would not pierce

it so as to hold fast. Appellee denied that he made this statement, and this made a question for the jury as to the cause of the injury.

Appellee relied for recovery upon proof of the defect in the tool furnished him with which to work, and the promise of the foreman to repair it.

It is earnestly contended by counsel for appellant that the undisputed evidence brings the facts of the case within the operation of what is called the "simple tool" doctrine, and that, on account of the simplicity of the tool furnished, no charge of negligence can be predicated upon the defect, and that the promise of the foreman to repair it did not relieve appellee from his assumption of the risk of danger which resulted. Counsel rely upon decisions of this court in which some recognition has been given to the doctrine mentioned. *C. R. I. & P. Ry. Co. v. Smith,* 107 Ark. 512; *Fordyce Lumber Co. v. Lynn,* 108 Ark. 377; *Arnold v. Doniphan Lumber Co.,* 130 Ark. 486. They also cite a great many decisions of other courts on this subject. It cannot be said that this court has given full recognition to this doctrine as announced by some of the other courts; in fact, our recognition has been very guarded and limited. In the Smith case, *supra,* we said:

"There is no hard and fast rule that may be laid down as governing the liability of an employer for a defect in common tools. In view of this condition, we do not undertake to say what state of facts the rule of liability should embrace and what state of facts it should not."

That was a case where negligence was based on a charge against the master for furnishing a hammer with a worn and defective striking face.

In *Arkansas Central R. Co. v. Goad,* 136 Ark. 467, we held that a lining bar used in raising railroad ties for the purpose of spiking the rails to the ties was not a simple tool, within the meaning of the doctrine bearing that designation. It seems to us now that a canthook

is not less simple in its construction and operation than a lining bar as described in the Goad case, *supra*. In fact, there are more complications about the construction and use of a canthook than there are about a lining bar. Learned counsel for appellant cite a great many cases giving effect to this doctrine, but none of the cases refer to the particular tool involved in the present inquiry. On the contrary, there are cases which expressly hold that a canthook is not a tool so simple in its nature the furnishing of which may not form a basis of a charge of negligence. *Parker* v. *Lumber Co.*, 98 Miss., 750, 40 L. R. A. (N. S.) 852; *Williams* v. *Garbutt Lumber Co.*, 132 Ga. 221.

The evidence shows that appellee did not make his own selection of the particular tool to be used, but that it was furnished to him by the foreman, with express instructions to use it until it could be repaired, and there was a promise that it would be repaired by a certain time. This furnishes additional reason why the doctrine invoked by counsel has no application, for, where the servant has no opportunity to make a selection of the tool, he does not assume the risk unless the defect in it and the danger from using it are so obvious that a man of ordinary prudence would not use it. Nor does it constitute contributory negligence on the part of the servant to use such an implement unless the defect and consequent danger are so obvious that a person of ordinary prudence would not use it under the circumstances. We cannot say here that the undisputed evidence shows contributory negligence on the part of appellee.

The evidence was sufficient to warrant the jury in finding that there was an express promise to repair, which relieved appellee from all assumption of risk.

The next ground urged for reversal of the verdict is the giving of an instruction as follows:

"No. 3½. You are instructed that it was the duty of the defendant company to exercise reasonable care to furnish the plaintiff a reasonably safe canthook for use

by him in work being performed for defendant, and it was the further duty of the defendant to exercise the same degree of care in maintaining said canthook in a reasonably safe condition for his use."

It is urged that this instruction was erroneous for the reason that appellee had the opportunity, and it was his duty, to select his own working tools, and that it was therefore his duty to see that the same was safe for use. We think that counsel place the wrong interpretation on the state of the testimony in the case, for, as we understand it, there is no dispute about the fact that the foreman selected the canthook and gave it to appellee, with express instructions to use it until it could be repaired. There was, indeed, testimony introduced to the effect that appellant maintained a blacksmith shop near the working place, and that workmen were authorized to take the tools to the blacksmith shop and have them repaired, in the absence of the foreman. This, of course, did not apply to a case where the tool furnished to the servant was selected and given to him by the foreman with directions to use that particular tool. We are therefore of the opinion that there was no evidence to the effect that it was the duty of appellee himself to select the particular tool and to have it repaired, and that there was no error in giving the instruction concerning the duty of the employer to exercise ordinary care to furnish reasonably safe tools. This statement covers the objection that was also made to instruction No. 4.

These are the only grounds urged for reversal of the judgment, and our conclusion is that neither of the grounds is tenable, and that the record is free from error, and the verdict is supported by sufficient evidence.

Affirmed.

OPINION ON REHEARING.

McCULLOCH, C. J. Counsel again insist that there is proof in the record to the effect that it was the duty of appellee to select the implement to work with, and

that instruction No. 3½ ignored that proof, and was therefore erroneous. We have reexamined the record, and still fail to find substantial testimony to the effect claimed by counsel. It seems undisputed that the cant-hook was furnished to appellee by the foreman, though there is a conflict as to the promise to repair. But, even if there had been such proof, the alleged error in instruction No. 3½ was waived by reason of appellant having requested and obtained similar instructions on the same subject. *Morris* v. *Raymond*, 132 Ark. 449; *Patterson* v. *Risher*, 143 Ark. 376. In three separate instructions (those numbered 3, 4 and 6), given at the request of appellant, the court submitted to the jury, as a test of appellant's liability, the question of the degree of care exercised in furnishing tools to work with.

Rehearing denied.