## BREECE–WHITE MFG. CO. v. BAKER.
### No. 11247.

Circuit Court of Appeals, Eighth Circuit.

Sept. 26, 1939.

W. W. Grubbs, of Eudora, Ark., for appellant.

Tom W. Campbell, of Little Rock, Ark. (Troy W. Lewis, of Little Rock, Ark., on the brief), for appellee.

Before STONE, GARDNER, and THOMAS, Circuit Judges.

STONE, Circuit Judge.

This is an appeal from a judgment entered on verdict for plaintiff in a personal injury suit.

Appellant presents here the claimed error of the trial court in denying its motion for a directed verdict at the close of all the evidence. Two reasons are urged why this motion should have been granted, to-wit, (1) insufficiency of the evidence, and (2) assumption of risk under the undisputed evidence.

(1) Sufficiency of Evidence.

The injury was a severe scalding of plaintiff occasioned by the explosion or blowing off of a radiator cap of a tractor, being operated by plaintiff as employee of defendant, causing steam and hot water from the radiator to spurt out over plaintiff. The circumstances leading up to the injury and the negligence claimed is stated in the petition as follows:

"The said injury to the plaintiff was caused by the negligence of the defendant in the following particulars: Plaintiff was employed by the defendant and began working for the defendant on September 6, 1937, and was assigned to the work of driving one of the defendant's tractors in the woods near Eudora, snaking the de-

fendant's logs from the woods to be transported to the defendant's mill at Eudora. Although plaintiff had had considerable experience driving tractors, he had never driven nor seen a tractor with radiator equipment such as this one had. The defendant neglected and failed to give the plaintiff any instructions or explanation whatsoever as to the means necessary to prevent radiator of said tractor from overheating. Soon after the plaintiff began to operate said tractor he observed that the radiator thereof had a tendency to overheat and plaintiff replenished the water in it but found that it continued to overheat. Plaintiff thereupon notified the foreman, who was then and there employed by the defendant in charge of said work, of the fact that said radiator was overheating and the foreman asked plaintiff if he had been putting any water in the radiator and upon plaintiff's informing said foreman that he had been putting lots of water in the radiator, the foreman told him to 'just keep putting water in it;' but the defendant's said foreman and the defendant wholly neglected and failed to give plaintiff any further instructions or directions in respect to the prevention of said radiator from overheating except to 'just keep putting water in it.' Plaintiff, in pursuance of the said instructions of his said foreman, continued to put more water in said radiator at frequent intervals, but the said radiator continued frequently to get overheated and finally, just after noon on September 11, 1937, when plaintiff was snaking some logs with said tractor through a dense portion of the said woods, he had encountered some obstructions in front of said tractor, making it necessary for him to go to the front of said tractor to investigate said obstructions and when he had just reached a point in front of the radiator of said tractor the steam which had generated in said radiator exploded and caused the face, neck and chest of the plaintiff to be terribly and painfully scalded and burned by the steam and hot water thereby thrown from said radiator upon the plaintiff. Up to the time of said explosion the plaintiff did not know and had never been instructed as to the cause of the said overheating of said radiator; but since said explosion occurred the plaintiff has learned that the cause of said explosion was the negligent manner in which the defendant had equipped said radiator and the negligent failure on the part of the defendant to warn or instruct plaintiff

about the peculiar equipment the defendant had installed upon said radiator or as to the means necessary to be used to prevent said equipment from causing such overheating of the radiator. There was a large steel shield bolted on in front of and about one inch from the fins of said radiator. Said shield had holes in it so that it appeared from an outside inspection thereof that air could pass through it into the fins of the radiator; but the defendant had made an extra wire shield and had slipped it down between the aforesaid steel shield and the radiator fins. The said steel shield extended back under the radiator at the bottom and back along the sides of the said radiator so that the space between the fins of the radiator and the said steel shield was completely enclosed at the bottom and sides, but the top of the said space was left open and uncovered. The woods through which it was necessary for the plaintiff to drive said tractor in the snaking of the defendant's said logs were dense with underbrush and cane and high weeds; and in the passage of said tractor through the said dense bushes, weeds, and cane, the leaves therefrom caught upon the front of the said tractor and were pulled off and many of them got into the said space between the said steel shield and the fins of said radiator, and the said space thereby became filled with such leaves and the air was thereby prevented from reaching the fins of said radiator and the said radiator was thereby prevented from cooling and was thereby caused to become overheated, and the said explosion of said radiator was thereby caused to occur. The defendant was negligent in causing the said explosion and the plaintiff's said resulting injury in that the defendant, by the peculiar equipment it had caused to be installed on said radiator, thereby created a trap that caught and held the leaves from the bushes through which it was necessary to drive said tractor and said defendant neglected and failed to cause said leaves to be removed therefrom and neglected and failed to warn or instruct plaintiff as to the danger of the gathering of leaves in said space in sufficient quantity to prevent the air from getting into said radiator, although the defendant had full knowledge of the fact that such leaves had been gathering in said space in the front of said radiator prior to their employment of the plaintiff to operate said tractor, but plaintiff had no knowledge that leaves had been

gathering in said space or that the cause of the overheating of said radiator was the presence of leaves in said space in front of it, nor could plaintiff discover that such was the cause of the overheating of said radiator from such inspections thereof as plaintiff was required to make or was capable of making with his lack of knowledge of the peculiar construction of the said equipment in front of said radiator."

Appellant contends that the evidence fails in two respects: (a) absence of any evidence that there were any leaves in the space between the shield and the radiator; (b) no negligence in failure to warn since the risk or danger was usual, open and obvious.

■ (a) *Evidence of leaves in radiator space.* There was no direct evidence by any witness that leaves had accumulated and were in the space between the shield and the radiator at the time of the explosion. The evidence was circumstantial. There was evidence as follows. Plaintiff was an experienced operator of tractors but had never before operated one in woods, brush or weeds. He began work for defendant on Monday and the injury happened about one or one-thirty the afternoon of the following Saturday. On Tuesday, about ten in the forenoon, the tractor started to get hot. He inquired of his boss as to what caused this. The boss asked if he had put water in and was told he had. The boss said "keep putting water in it and keep gwine with it." Thereafter, he continued operating and would put water in the radiator every time he came to "a little stream or something." This would be from four or five to six or seven times a day. "I * * * put water in it that morning [day of the injury], and about eleven o'clock I put some more in it, and it was full of water." The man who had operated the tractor until two days before plaintiff began, was an experienced operator in woods. He was using this tractor in the same kind of woods where plaintiff later worked. It was dense undergrowth, grass and cane. This was in early September. He testified that leaves would get in this space between the shield and the radiator. He found it necessary to clean out the leaves four or five times a day. The radiator would heat and steam if the leaves were in the space. " * * * When I cleaned out the leaves, it would

run all right cold until it got full of leaves again." "It would only get hot when the leaves accumulated in this slot." The above is sufficient to require submission to the jury of the issue as to whether it was an accumulation of leaves which caused the heating of the radiator at the time of the injury.

Appellant argues that this heating may have been caused by lack of water, the motor running while the tractor was standing still or some other cause; and, therefore, the jury were left to speculate as to the cause of the heating.

There are two complementary rules of law, well stated by Judge Gardner for this Court (Sears, Roebuck & Co. v. Peterson, 8 Cir., 76 F.2d 243, 247) as follows: "The jury may not base a verdict on mere speculation, but neither should the court indulge in mere speculation as to a possible defense unsupported by any proven facts." Whether either of these rules is applicable in a particular case depends upon the evidence. "Where the testimony leaves the matter uncertain and shows that any one of half a dozen things may have brought about the injury, for some of which the employer is responsible and for some of which he is not, it is not for the jury to guess between these half a dozen causes and find that the negligence of the employer was the real cause, when there is no satisfactory foundation in the testimony for that conclusion." Patton v. Texas & Pacific R. Co., 179 U.S. 658, 663, 21 S.Ct. 275, 277, 45 L.Ed. 361. On the other hand, "The fact that hypotheses incompatible with the liability of the appellant may be conjectured or imagined when such are not based on any testimony in the case, affords no reason to reverse a verdict and judgment which is supported by the testimony." Judge Woodrough for this Court in Terminal Railroad Ass'n of St. Louis v. Farris, 8 Cir., 69 F.2d 779, 785.

The evidence of any lack of water in the radiator is in the testimony of Dave Willis who testified that he had gone to plaintiff when he was injured; had taken plaintiff on the tractor and, "running the tractor in low", had taken him about one-half mile to where help was secured; that he had put about two bucketfuls of water in the radiator at that place; that he then drove the tractor about one and one-half miles where he left it for "safekeeping"; that at this latter place he put three

bucketfuls in the radiator. The other evidence is that the radiator was full of water about eleven o'clock—only some two to two and one-half hours before the injury. Also, the evidence is that the tractor ran cool unless the space was clogged by leaves. The most which can be said of this evidence from Willis is that it was not necessarily inconsistent with the theory of plaintiff, since whatever the amount of water in the radiator just before the explosion there would, obviously, be a lack of such afterwards. Also, it was for the jury to resolve any conflict in this evidence which, on one side, tended to show no failure to supply water and, on the other, tended to show such failure.

There is no evidence that the overheating was caused by the running of the motor while the tractor was standing still. The only evidence as to the tractor standing still is that, when plaintiff found the engine laboring, he stopped the tractor and went to the front end when the explosion occurred.

On the other hand, there is positive evidence that the space frequently filled with leaves; that unless removed the radiator became very hot; that when the leaves were absent the radiator was not overheated: and that the tractor was being operated where it had before and normally would get clogged with leaves.

■ (b) *Failure to warn.* Appellant insists that no issue of failure to warn plaintiff should have been submitted to the jury because the "whole front and equipment constituted such a simple affair that any dangers that might have been connected with it were so readily obvious and apparent that no duty to warn appellee was required of appellant."

Of course, a situation or a thing may be so obvious that there need be no warning as to its existence or as to its effects. Missouri Pacific Railroad Co. v. Aeby, 275 U.S. 426, 430, 48 S.Ct. 177, 72 L.Ed. 351; Standard Oil Co. of Louisiana v. Martin, 8 Cir., 21 F.2d 912, 913, this Court; Buena Vista Veneer Co. v. Broadbent, 107 Ark. 528, 534, 155 S.W. 919, 921. Otherwise, it is a question for the jury as to whether such situation or thing is so obvious or is not that warning thereof is not a duty or is.

The Supreme Court of Arkansas has gone rather far in applying the rule that the obviousness of such situations or things is a jury question. Wisconsin & Arkansas Lumber Co. v. Ashley, 158 Ark. 379, 250 S.W. 874; Arkansas Central Railroad Co. v. Goad, 136 Ark. 467, 206 S.W. 901; St. Louis, I. M. & S. Ry. Co. v. Brown, 114 Ark. 574, 169 S.W. 940. However, the evidence here does not require any stretch of application since it clearly justifies a holding that warning was required here.

■ The undisputed evidence is that the wire screen was placed between the radiator and the shield; that leaves would fall into the opening between the shield and the screen; that the effect of action of the radiator fan was to draw such leaves against the screen with the resulting diminution of air passing to the radiator to cool it; that it was necessary, several times daily, to remove the screen and rake off the leaves by hand in order to keep the radiator from overheating.

There was positive evidence by plaintiff that he had no knowledge of leaves falling in between the shield and the radiator; that such occurrences caused the heating of the radiator; that he had had no previous experience from which such knowledge might be implied; that he did not know the screen was there; that he had sought information from his boss as to why the radiator heated (thus bringing home to the master his lack of experience and knowledge in this respect); that the information given him was solely to keep the radiator filled with water (thus clearly implying that the heating was caused by lack of water alone).

Appellant urges that there was undisputed evidence that the upper end of the screen projected above the front of the radiator and, therefrom, it must be concluded that plaintiff knew it was there. Such evidence might have justified the jury in finding that plaintiff had such knowledge but that was a fact put in dispute by the direct testimony of the plaintiff. Even, if he had such knowledge, there was no testimony that he knew why the screen was there or its effect upon the radiator.

Appellant urges that plaintiff did not need warning because (we assume) he should have known that leaves would fall into the space before the screen and the effect thereof because he had had experience in driving tractors similar to this tractor. The evidence does not show that plaintiff had ever before driven a tractor with either the shield or the screen pro-

tection for the radiator. The evidence is that the shield was standard equipment for these Allis-Chalmers tractors which were to be used in the woods and, inferentially, on all others not used on roads. Whether the shield was standard on the tractors used or known to plaintiff does not appear—his work had been operating an Allis-Chalmers tractor on levee work and he had never worked in woods before. This screen was a device installed by defendant. In the evidence is no basis for concluding that plaintiff had had any familiarity or experience with either the shield or the screen equipment before he operated this tractor.

### (2). Assumption of Risk.

Appellant contends that, under the undisputed evidence, plaintiff assumed the risk which caused his injury and, therefore, a verdict should have been directed for it.

The first supporting argument is based on the premise that the risk involved here was that the water in the radiator might become overheated. Since this premise is not sound, the argument must, of course, fall. It may be conceded that radiators in tractors and automobiles frequently become overheated and that experienced operators of such must know this as a matter of common knowledge. However, that is not the crux of what is involved here. The important thing here is whether or not the overheating which caused this injury might have been avoided had plaintiff been warned of the cause (found by the jury) of this overheating and of the way to have avoided such overheating. If such warning could have prevented the overheating—and, therefore, the injury—there was a legal duty to warn, provided, plaintiff was ignorant of this situation which had been created in part by the defendant and in part by the conditions of the work.

However, appellant insists that even though the risk involved here be regarded as the "cause of the overheating" yet the evidence showed no duty to warn because this risk was so obvious and open that it would have readily been observed by anyone exercising reasonable care or because plaintiff had actual notice of this risk. The knowledge, implied or actual, of the plaintiff as to the cause of this overheating and as to the means of preventing it has been

examined and has been determined against defendant hereinbefore in connection with "(b) Failure to warn." Nothing more needs to be added thereto.

The judgment is affirmed.